ADAMS v CITY OF DETROIT

Docket Nos. 110121, 115093. Submitted February 14, 1990, at Detroit. Decided April 10, 1990. Leave to appeal applied for.

James T. Adams filed complaints in the Wayne Circuit Court against the City of Detroit seeking a writ of mandamus and an order of superintending control. Plaintiff alleged that the provisions of the veterans preference act were violated when he was discharged from employment with the Detroit Fire Department. The judge in the mandamus action, Susan D. Borman, granted summary disposition in favor of defendant and dismissed the complaint. The same judge thereafter granted defendant's motion for summary disposition in the superintending control action. Plaintiff appealed from both orders. By order of the Court of Appeals, the appeals were heard together.

The Court of Appeals *held:*

1. Plaintiff was notified of the charges brought against him and that disciplinary action might ensue.

2. Plaintiff was afforded a predisciplinary hearing. Any claimed deficiency in this matter was entirely due to plaintiff's own actions.

3. The veterans preference act does not require that plaintiff be afforded a full hearing pursuant to the act before termination.

4. Plaintiff had adequate notice of the grounds for suspension or discharge in regard to the charges against him. Failure to specifically enumerate the grounds listed in the veterans preference act was not error.

5. No error occurred under the circumstances of this case because of the delays which occurred prior to plaintiff's hearing before the mayor and the announcement of the mayor's decision.

6. The hearing officer's report contained adequate findings of

REFERENCES

Am Jur 2d, Veterans and Veterans' Laws §§ 123, 124, 126.

Rights of non-civil service public employees, with respect to discharge or dismissal, under state veterans' tenure statutes. 58 ALR2d 960.

fact and sufficiently encompassed the grounds for suspension or discharge set forth in the veterans preference act.

7. The trial court properly found that there was competent, material and substantial evidence on the record to support the discharge.

Affirmed.

1. Statutes — Veterans Preference Act — Due Process.

The veterans preference act does not require that an employee to whom the act is applicable be afforded a full hearing pursuant to the act before his employment may be terminated (MCL 35.402; MSA 4.1222).

2. Statutes — Veterans Preference Act — Hearing Officer's Report.

The veterans preference act does not require that a hearing officer's report upholding the dismissal of an employee to whom the act is applicable specify in statutory terms which of the six statutory bases for dismissal served as the actual basis for discharge; a report is sufficient where it encompasses the grounds set forth in the statute (MCL 35.402; MSA 4.1222).

*Matheson, Parr, Schuler, Ewald, Ester & Cooke* (by *John A. Stevens*), for plaintiff.

*Donald Pailen,* Corporation Counsel, *Abigail Elias,* Deputy Corporation Counsel, and *Thomas L. Walters* and *John H. Willems,* Assistant Corporation Counsel, for defendant.

Before: Danhof, C.J., and Brennan and G. S. Allen,* JJ.

Per Curiam. In Docket No. 110121, plaintiff appeals, by delayed application for leave granted, the trial court's order entered April 15, 1988, granting defendant's motion for summary disposition presumably under MCR 2.116(C)(8) and (10). In Docket No. 115093, plaintiff appeals as of right the trial court's order entered on January 30,

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

1989, denying plaintiff's request for superintending control. The appeals were heard together. We affirm.

Plaintiff, an honorably discharged war veteran, was employed by the Detroit Fire Department as a Civil Defense Coordinator until his discharge on February 19, 1982.[1] On January 22, 1982, Delores Stewart filed an employee complaint against plaintiff alleging that plaintiff had verbally abused and threatened her. Plaintiff responded to Stewart's complaint by submitting a written statement generally denying the allegations. Deputy Fire Commissioner Phillip F. Gorak, assigned to handle the complaint, found plaintiff's response inadequate and called a meeting for February 10, 1982. Gorak also asked plaintiff to submit another statement. Also submitted to Gorak was a statement from another employee, Alvin Martin, that on the day before the Stewart incident plaintiff had pulled a gun on Martin.

At the two-hour meeting held February 10, Gorak reviewed plaintiff's second statement and the statements of Superintendents Bojalad and Dolley, both of whom were witnesses to the Stewart incident. Present were plaintiff, Gorak, Bojalad, and Administrative Assistant Quinton Watkins. Following review of the matter with Fire Commissioner Melvin D. Jefferson, Gorak found plaintiff guilty of conduct "bringing disgrace and discredit to the [Detroit Fire] Department" and suspended plaintiff for fifteen days. By letter dated February 10, 1982, and sent by registered mail to plaintiff's home and office, plaintiff was notified of his fifteen-day suspension.

On February 15, Gorak was informed that one of the two registered letters could not be delivered

---

[1] A notice of discharge was prepared and dated February 19, 1982. Plaintiff received the notice on February 23, 1982.

and the other was refused. Accordingly, Gorak decided to personally take the suspension notice to plaintiff at plaintiff's office. When Gorak attempted to give the notice to plaintiff, plaintiff refused to accept it, whereupon Gorak walked down the hall to Superintendent Richard Dolley's office to ask Dolley to witness the attempted service. When Gorak and Dolley went to plaintiff's office, the door was closed and locked. Gorak knocked and got no response.

On February 16, plaintiff was advised by Watkins of his suspension and the requirement that he leave his office. On February 18, Gorak telephoned plaintiff and told him that if he did not vacate the premises "he was liable to discharge." Plaintiff replied that Gorak was not to contact him again and that all future communications should be through his attorney. Plaintiff did not name his attorney and hung up on Gorak.

Following this incident, Gorak contacted Commissioner Jefferson. Together they decided to discharge plaintiff. Notice of discharge dated February 19, 1982, was prepared together with a letter explaining in detail the reasons for the discharge. The notice and attached letter were sent by registered mail, unsuccessfully. In addition, two telegrams were sent—one to plaintiff's home and the other to his office. The telegrams were not accepted. On February 23, Administrative Assistant John King and two Detroit police officers were dispatched to contact plaintiff. King gave plaintiff the notice and accompanying letter. Soon thereafter, plaintiff cleaned out his office and left the premises.

On March 4, 1982, plaintiff filed a grievance with the Civil Service Commission and sent a letter to Mayor Young requesting a veteran's preference act (VPA) hearing pursuant to MCL 35.402;

MSA 4.1222. Following a series of conferences and meetings, the details of which are not necessary to spell out herein, a preconference hearing was held April 22, 1982. At that hearing, attended by plaintiff, his attorney Kenneth Cockerel, the VPA hearings officer Kay Schloff, city attorney Kenneth King, and Michael Jozwik, plaintiff requested that the VPA and civil service hearings be jointly held, but if that were not possible, then the transcripts of one hearing should be submitted in the other. Final decision on this matter was not reached but eventually plaintiff decided to have the civil service hearing held first.

The civil service hearing was conducted on June 24 and June 28, 1982, before mutually agreed upon arbitrator Stanley Brahms. Over six hundred pages of transcript were taken. On August 9, 1982, the arbitrator issued his written decision upholding plaintiff's discharge.

The VPA hearing was held in August and September, 1983. By agreement, the transcripts of the civil service hearing were admitted instead of actual testimony. Plaintiff, however, did call two additional witnesses. Hearings Officer Schloff's findings upholding the discharge were presented to Mayor Young by letter on April 17, 1984. On November 18, 1985, Mayor Young upheld plaintiff's discharge by letter.

On July 25, 1986, plaintiff filed a complaint for writ of mandamus in the Wayne Circuit Court, alleging that plaintiff's due process and equal protection rights under 42 USC 1983 had been violated and that the city had violated the provisions of the veterans preference act, MCL 35.402; MSA 4.1222. At a hearing held April 15, 1988, on the parties' cross-motions for summary disposition, the court ruled on two issues. First, the court held that plaintiff was not denied due process or equal

protection in violation of *Cleveland Bd of Ed v Loudermill*, 470 US 532; 105 S Ct 1487; 84 L Ed 2d 494 (1985). Second, the court held that the provisions of the vpa were not violated and that a hearing examiner's findings of fact may not be challenged in a mandamus action, but only by appeal. Accordingly, the court granted summary disposition in favor of defendant and dismissed the complaint for mandamus.

While the action for mandamus was pending, on February 10, 1988, plaintiff filed a complaint for superintending control in the Wayne Circuit Court. The complaint alleged that Mayor Young's written decision was legally deficient, that plaintiff's due process rights under the vpa had been violated, and that the mayor's decision was not supported by competent evidence. At a hearing held January 13, 1989, before the same judge who ruled on the mandamus proceedings, the court granted defendant's motion for summary disposition. In so ruling, the court again rejected plaintiff's claim that his due process rights had been violated contrary to *Loudermill, supra,* and ruled against plaintiff on five additional claims of error.

In Docket No. 110121 plaintiff's application for delayed appeal in the mandamus action was granted November 16, 1988.[2] In Docket No. 115093 plaintiff appealed as of right the order denying the order of superintending control. By order of this Court the appeals were heard together. Only the *Loudermill* issue is raised in Docket No. 110121. Five additional grounds for reversal are raised in Docket No. 115093.

[2] It appears that after the mandamus action was dismissed, plaintiff prevailed on defense counsel to hold off submitting a final order in the mandamus action. Unbeknownst to either counsel, an order was filed by the court April 15. Upon learning of this, counsel for plaintiff "promptly" filed the application for delayed leave to appeal.

I

Plaintiff contends that the due process and equal protection rights articulated by the United States Supreme Court in *Loudermill, supra,* were violated by defendant city in five respects: (1) failure to notify plaintiff that administrative or disciplinary action would be taken against him because of charges brought against him by Ms. Stewart; (2) failure to afford plaintiff a pretermination hearing; (3) failure to hold a "full VPA hearing" *before* suspension or discharge; (4) inordinate and undue delay before and after conducting the VPA hearing; and (5) failure to comply with OAG, 1930-1932, p 584 (May 18, 1932), issued by then-Attorney General Paul Voorhies.

The plaintiff in *Loudermill* was a classified civil service employee in the Cleveland school system who was discharged for falsifying his employment application. The Ohio statute provided that a classified employee could not be suspended or terminated except for good cause shown. *Loudermill,* 535-536. When plaintiff's discharge was upheld by the Cleveland Civil Service Commission, suit was filed in the United States District Court, which dismissed for failure to state a claim. *Loudermill,* 536-537. On appeal, the United States Supreme Court held that plaintiff was entitled to " 'some kind of a hearing' prior to the discharge," *Loudermill,* 542, that the required pretermination hearing is to determine whether "there are reasonable grounds to believe that the charges against the employee are true and support the proposed action," *Loudermill,* 545-546, and that due process is satisfied if the plaintiff is given "oral or written notice of the *charges* against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill,* 546. (Emphasis added.)

While *Loudermill* mandates that a plaintiff be notified of the charges brought against him, nothing in the opinion imposes a further requirement that upon such notification the plaintiff be notified that disciplinary action might be taken against him. As a realistic matter, if plaintiff had any doubts that he might be disciplined because of the Stewart and Martin complaints, those doubts should have been dispelled when Hearing Officer Gorak informed plaintiff that his initial response was inadequate and asked plaintiff to submit another statement at the February 10, 1982, meeting. Given the facts in this case, we conclude that early on plaintiff knew full well that disciplinary action might ensue. Accordingly, we reject plaintiff's claim of *Loudermill* violation (1).

We disagree with plaintiff's claim that the city failed to afford him a pretermination, as distinguished from a presuspension, hearing. The record discloses that Gorak gave plaintiff oral notice of the charges which would be heard at the meeting on February 10, 1982, that, in addition, Gorak informed plaintiff of the evidence which had been submitted against plaintiff, and that a hearing was held February 10 at which plaintiff, Gorak, Superintendent Bojalad and Administrative Assistant Watkins were present. Thus, we conclude a predisciplinary hearing was held. As noted earlier, *Loudermill* does not require that the hearing be elaborate. Nor is it required to be held before a neutral party. See *Garraghty v Jordan*, 830 F2d 1295, 1302 (CA 4, 1987).

While it is true that following the February 10 hearing it was decided to suspend plaintiff and that in the period between the decision to suspend and the decision to discharge plaintiff was not afforded an opportunity for another hearing, it was plaintiff who avoided all attempts to accept

notice of suspension or to secure his vacation from office. Moreover, it was plaintiff who on February 18, 1982, was informed by telephone that if he did not vacate his office promptly "he was liable to discharge." Nothing in *Loudermill* requires a separate pretermination hearing. The city could have discharged plaintiff rather than suspend him following the February 10 meeting.

It would be incongruous for this Court to conclude that plaintiff was denied his constitutional rights of due process and equal protection when the record so clearly discloses that plaintiff repeatedly refused to accept service of notice of suspension and declined to vacate his office after being pointedly warned he would be liable to discharge for refusing to cooperate with defendant administration. In short, we agree with defendant that any claimed deficiency in this matter was entirely due to Adams' own action. Plaintiff's claim that the constitutional rights articulated under *Loudermill* were violated for reasons (3), (4) and (5), *supra,* do not concern rights conferred under *Loudermill* but, instead, concern rights granted under the veterans preference act and, as such, are more properly addressed *infra* in the five claims of error raised in Docket No. 115093.

II

Plaintiff argues that the veterans preference act requires that plaintiff be afforded a "full hearing" pursuant to the vpa's requirements before termination. We strongly disagree.

The vpa was enacted in 1897 to give preference to Civil War veterans in seeking and retaining public employment. *Beadling v Governor of Michigan,* 106 Mich App 530, 534-535; 308 NW2d 269 (1981). Following World War I, the statute was

strengthened to absolutely prohibit a veteran's removal from office "except after a full hearing before the circuit court of the county where he is employed." 1919 PA 224. But with the advent of civil service and collective bargaining and the protections afforded public employees thereunder, the statute was amended in 1931 (1931 PA 67) to add the additional proviso found in the statute today:

> [W]here such veteran has been removed, transferred, or suspended other than in accordance with the provisions of this act, he shall file a written protest with the officer whose duty under the provisions of this act it is to make the removal . . . within thirty days from the day such veteran is removed . . . ; otherwise the veteran shall be deemed to have waived the benefits and privileges of this act.

In an attempt to reconcile the apparent conflict between the 1919 language and the 1931 proviso, Attorney General Paul Voorhies issued 1932 OAG 584. That opinion construes the statute as amended in 1931 to mean that, although a pretermination or presuspension hearing is the preferred procedural route, there are circumstances in which the public interest dictates the immediate removal of the veteran. In such instances, if the veteran does not file the thirty-day protest, the removal becomes final. However, if the veteran does file the timely protest and demand for hearing

> the pay of the veteran continues and his removal, transfer or suspension is not final unless and until the notice has been given, the hearing held and the Governor confirms the same. Up to that point of time, the veteran continues to be entitled to receive his pay. [1932 OAG 584, 585.]

Plaintiff strongly argues that the Voorhies opinion makes sense because it gives the city (or other public unit) the latitude to keep the veteran at work pending the VPA hearing and at the same time impresses on the city the urgency of the need to hold the hearing, thus avoiding the alleged unconscionable delay between termination and the mayor's decision in the instant case. Plaintiff further contends that the trial court misplaced its reliance on the following cases which hold contrary to Voorhies: *Glover v Kalamazoo*, 98 Mich App 465; 296 NW2d 280 (1980), lv den 411 Mich 951 (1981), *Valentine v Redford Twp Supervisor*, 371 Mich 138; 123 NW2d 227 (1963), and *Egan v Detroit*, unpublished opinion per curiam of the Court of Appeals, decided October 4, 1983 (Docket No. 65010).

We agree with plaintiff that *Glover* did not deal with the issue presented in the instant case.[3] We further agree that *Egan*, while squarely addressing the issue, is an unpublished opinion which, under our rules, may not be cited as authority. But we agree that *Valentine* is contrary to 1932 OAG 584.

On February 24, 1961, Valentine was removed from the Redford Township Police Department on charges of immoral conduct. *Valentine*. On February 28, he filed a demand for a hearing before the civil service commission and a protest of his dismissal with the township board under the VPA. At the public hearing before the civil service commission, Valentine's dismissal was sustained. No hearing was ever held before the township board as required under the VPA. Because such hearing was not held, Valentine sought mandamus in circuit court to compel his reinstatement to his job. Fol-

---

[3] The *Glover* Court focused on the due process issue as it related to a police officer's indefinite suspension prior to the officer's subsequent discharge.

lowing denial of mandamus by the circuit court, Valentine appealed to the Michigan Supreme Court. *Valentine,* 142.

On appeal, the township contended that the VPA was inconsistent with and had been repealed by the subsequently enacted civil service act. *Valentine, supra.* Seven justices (SOURIS, J., dissenting) held that the VPA had not been repealed by the civil service act and, therefore, plaintiff was wrongfully denied a VPA hearing before the township board. *Valentine,* 143-144, 146, 147. But having decided that, the Court declined to reinstate plaintiff to his job.

> Plaintiff's petition for writ of mandamus and prayer for relief in his brief filed here seek mandamus to compel his reinstatement to his job. While the veterans' preference act does provide that the township board shall hold a hearing within 30 days after the veteran employee files a protest of his discharge, it does not provide that failing that the employee is automatically reinstated in his position. The hearing must precede such reinstatement. He has not had the hearing before the township board. He is entitled to it. His right to reinstatement is dependent on the decision of that board. [*Valentine,* 147.]

Valentine's demand for reinstatement to his job with pay is precisely the relief promulgated in 1932 OAG 584. By refusing to reinstate plaintiff, the *Valentine* Court squarely rejected the Voorhies opinion.

III

Plaintiff contends that the City of Detroit violated the VPA by failing to provide written notice of the enumerated VPA grounds for suspension or

discharge. The specific VPA grounds for suspension or discharge are set forth in the act:

> No veteran . . . shall be removed or suspended . . . from . . . employment except for official misconduct, habitual, serious or willful neglect in the performance of duty, extortion, conviction of intoxication, conviction of felony, or incompetency. [MCL 35.402; MSA 4.1222.]

Apparently, it is plaintiff's claim that because the city never used the "magic words" set forth in the statute, plaintiff was denied knowledge of the reasons for suspension or discharge. We find this position untenable.

At the February 10, 1982, meeting, the parties discussed the charges brought against plaintiff. Subsequently, plaintiff was sent letters which listed in detail the reasons for the suspension. When plaintiff refused to accept the letters or vacate his office, new letters were sent to plaintiff setting forth in detail the reasons for discharge. Again, at the civil service hearing on his grievance, plaintiff was furnished a copy of the written decision of the commission. Under these circumstances, to find that plaintiff did not adequately know in advance the charges against him would be disingenuous. In our opinion, the grounds set forth in the letters and several communications given plaintiff clearly encompass the grounds set forth in the statute. Had notice been given plaintiff merely in terms of the six enumerated grounds in the VPA, for example "official misconduct," plaintiff would have been less well-informed of the charges against him.

IV

Under MCL 35.402; MSA 4.1222, plaintiff was

entitled to a hearing before the mayor within thirty days of his March 4, 1982, letter of protest. The hearing was not conducted until some eighteen months later and Mayor Young's decision was not reached until 3½ years after plaintiff's letter of protest. Plaintiff contends the delay was unconscionable and deprived plaintiff of his rights under the statute and the federal and state constitutions.

There would be merit in plaintiff's claim had not plaintiff himself requested that the civil service hearing be held first. As noted earlier in this opinion, at the prehearing conference held April 22, 1982, counsel for plaintiff requested that the civil service hearing and the VPA hearing be held jointly, but if this were not possible, that the civil service hearing be held first and the transcripts of one hearing be used in the other. VPA Hearings Officer Schloff's findings of fact on April 17, 1984, recite that the delay in the VPA hearing resulted from plaintiff's choice "to first pursue the civil service remedies." We also note that although Mayor Young's decision was announced November 18, 1985, plaintiff made no complaint concerning delay until suit for mandamus was filed July 25, 1986. Given these circumstances, we fail to find error because of delay.

v

Plaintiff next argues that Hearings Officer Schloff's report failed to make adequate findings of fact to support any of the grounds set forth in the VPA and, because Mayor Young's decision was thus based on inadequate findings of fact, the mayor's decision was not based on competent, material and substantial evidence. We disagree.

Schloff's report sets forth in detail the facts leading up to the decision to first suspend and

thereafter to discharge plaintiff and the reasons for the discharge. The report concludes as follows:

> Mr. Adams' conduct in the incident which caused the original suspension was serious and the employee felt threatened by the words used and by an unrelated incident involving a weapon.
>
> The Department had little choice but to discharge when Mr. Adams refused repeated attempts to serve him with the suspension and refused to vacate his office until the police were called in.
>
> I recommend that the Fire Department's actions be upheld.

While, as in Issue III *supra,* the findings do not cross-reference to or specify any of the six statutory bases for dismissal, we find the report sufficiently encompasses the grounds set forth in the statute. As this Court stated in *Commeret v Bd of Ed of the Jenison Public Schools,* 75 Mich App 115, 118-119; 254 NW2d 808 (1977):

> Here, the written notice to plaintiff conveyed an unmistakable message that her work was, in fact, unsatisfactory even though that exact word was not itself used. To require more, on these facts, would elevate form over substance; no magic word is necessary to give effect to the intention of the statute.

We further note that nothing in the VPA requires that the report specify in statutory terms which of the enumerated bases served as the actual basis for discharge.

## VI

Lastly, it is argued that the trial court erred in finding there was competent, material and sub-

stantial evidence on the record to support the discharge. Plaintiff's brief on this issue is mainly a repetition of the positions advanced in Issues III and IV, viz.: that the Schloff report, the notice of suspension and later the notice of discharge failed to use the magic words or sufficiently describe conduct set forth as enumerated bases for discharge in the statute.

Plaintiff also contends that the hearing officer's report and the several notices furnished plaintiff describe no more than "insubordination" which is not an enumerated basis for discharge in the VPA but is an enumerated ground for discharge under § 12 of the civil service act. MCL 51.362; MSA 5.1191(112). According to plaintiff, it is clear legal error to attempt to stretch the VPA to encompass the grounds set forth for discharge in the civil service act. We agree. However, as stated before, we find that the actions set forth in detail in the hearing officer's report and in greater detail in arbitrator Brahms' report to the Detroit Civil Service Commission[4] describe more than simple insubordination.

Finding no error on any of the issues raised on appeal, the trial court's order entered April 15, 1988, granting summary disposition to defendant and order entered January 30, 1988, denying superintending control are affirmed. No costs, an issue of public importance being involved.

---

[4] In his opening statement at the VPA hearing September 13, 1983, counsel for the city stated that the Detroit Fire Department intended to prove that plaintiff's actions constituted "official misconduct" under the VPA.